[Civ. No. 1000.    Second Appellate District.—November 29, 1911.]

## JOHN O. JOHNSON, Appellant, v. ALL NIGHT AND DAY BANK, Respondent.

BANKS—DRAFT DRAWN BY PLAINTIFF DEPOSITED FOR COLLECTION—FIND-
ING OF DEPOSIT FOR CREDIT OF THIRD PERSON UNSUSTAINED.—In
an action to recover the proceeds of a draft drawn by the plaintiff
on a South Dakota bank, in which he had funds, and deposited with
the defendant bank for collection and payment of the proceeds to
the plaintiff, it is held that the evidence fails to support a finding
that when plaintiff deposited such draft for collection, he deposited
the same to the credit of a third party for collection, to whom pay-
ment was made.

ID.—FINDING OUTSIDE OF ISSUES—INSTRUCTION OF PLAINTIFF.—It is
held that an additional finding that plaintiff instructed defendant
to collect the draft and pay the proceeds to such third person is
outside of the issues, such fact not being pleaded in the answer.

ID.—TRANSFER OF DRAFT BY DELIVERY — INTENT OR AGREEMENT NOT
SHOWN.—Although the draft, as a negotiable instrument, might
have been transferred by delivery if the intent so to transfer it is
made apparent, yet it is held that there is nothing in the record in
this case to show any such intent, or any agreement with reference
to the transfer of the draft.

ID.—ISSUANCE BY EMPLOYEE OF DEFENDANT BANK TO THIRD PARTY OF
MEMORANDUM OF PLAINTIFF'S DEPOSIT — VIOLATION OF BANKING
RULES.—The issuance by an employee of the bank to the third
party, at his request, of a memorandum of the deposit made by the
plaintiff, did not of itself warrant the payment of the draft col-
lected by the defendant to such third party, whom the record shows
to have been a mere confidence operator.    It is held that the mat-
ters testified to by such employee to justify payment of the draft
to such third party are violative of every rule of banking, unusual
in character, and would be far from convincing had he not there-
after qualified the same by a practical withdrawal thereof.

ID.—BURDEN UPON COLLECTING BANK TO SHOW PAYMENT OF DRAFT TO
PLAINTIFF OR PERSON AUTHORIZED BY HIM.—In an action by the
plaintiff to recover the proceeds of a draft representing funds of
the plaintiff on deposit in the bank of another state, drawn there-
upon through the defendant bank, the burden is certainly upon the
defendant to show that this draft which it received as a collection
agent had, when collected, been paid over to plaintiff, or to some-
one by his authority.    It is held that no such payment is shown,
and that the findings to the contrary require a reversal.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

D. K. Trask, for Appellant.

Tanner, Taft & Odell, for Respondent.

ALLEN, P. J.—The action was brought to recover the amount of a draft, dated August 13, 1910, alleged by plaintiff to have been by him drawn upon a bank in South Dakota and indorsed and delivered to defendant, with instructions to collect the money and to pay the same to plaintiff when collected. It is further averred that the defendant bank collected the sum of $1,500 on the draft and failed and refused to pay the same to plaintiff. Defendant by its answer denies that plaintiff indorsed and delivered to it a draft with instructions to collect and pay the same to plaintiff, and that it accepted the same with an agreement to collect the money and pay to plaintiff. For a further answer, defendant alleges that plaintiff delivered to it a sight draft and deposited the same with defendant for collection to the credit of one H. E. Dixon; that thereupon, at the request and in the presence of plaintiff, defendant executed and delivered to plaintiff a duplicate deposit slip in the name of H. E. Dixon for collection; that thereafter, on August 17, 1910, defendant collected the money and paid the proceeds over to said Dixon. The action was tried by the court without a jury.

The court finds that on the thirteenth day of August, 1910, plaintiff delivered to defendant his sight draft and deposited the same with defendant to the credit of H. E. Dixon for collection. The court further finds that plaintiff instructed defendant to collect said draft and pay the proceeds thereof to said Dixon. This last finding is outside of the issues. The court also finds that the defendant executed a duplicate deposit slip, as receipt for said draft, in the name of H. E. Dixon, and on the seventeenth day of August, 1910, upon surrender by said Dixon of said duplicate deposit slip, defendant paid the sum of $1,500, the proceeds of said draft,

to said Dixon. Judgment was entered accordingly, from which judgment plaintiff appeals.

We are of opinion that appellant's contention, that the answer does not state facts constituting a defense, cannot be sustained. While the answer proper is evasive and presents no issue, the affirmative defense alleges the drawing of the draft and its deposit to the credit of Dixon for collection, and the subsequent payment, upon collection by the bank, to Dixon. Whether or not plaintiff deposited the draft to the credit of Dixon for collection is the only matter in issue by the answer. It is insisted by appellant that the finding of the court, that when plaintiff delivered to defendant the draft he deposited the same to the credit of Dixon for collection, is not supported by the evidence. A careful review of all of the evidence presented by the transcript satisfies us that plaintiff's contention in this regard must be sustained. The material evidence is confined to the testimony of one Green, an employee of defendant bank, and that of plaintiff. Green testifies that plaintiff and Dixon called at the bank together, and plaintiff produced a duplicate deposit slip issued to him by a bank in South Dakota, showing that plaintiff had on deposit there the sum of $1,500; that plaintiff wanted the money on this deposit slip, and Green stated to him that said slip did not represent money, that it was merely a receipt for his deposit; that "the only way I can get you any money on this is for you to make a draft on the bank, attach this deposit ticket, and as soon as they wire payment I can turn the money over to you, or give you credit for it." That after some conversation plaintiff told Green to fix up a draft, which he did, and presented it to Johnson, and Johnson signed it and handed it to Dixon, and Dixon said, "That is all right; I will just indorse this," but Green said to Dixon, "Your indorsement will do no good but may do no harm." The draft thus indorsed was handed back to Green, and Green made out a receipt for the draft and handed it to Johnson; that Johnson asked what the paper was that he had handed to him, and Green told him it was a receipt for the draft; that plaintiff said, "Well, I don't want this, do I?" and Dixon said, "Yes, keep that," when Johnson replied, "You take care of it," and handed it to Dixon. Dixon then said to Green, "If I

am to handle this, it better be made out in my name," and Johnson said, "Fix it up to suit yourself." Thereupon, Green took up the receipt he had issued to plaintiff and issued another one in the name of Dixon. Green, on behalf of the bank, wired to South Dakota, and on August 17th, receiving instructions to pay the draft, turned the money over to Dixon. Green during the progress of his testimony testified that he told plaintiff that if Dixon held the receipt he would be entitled to the money, and that plaintiff said, "That is all right." At another time he testified that the issuance of the receipt to Dixon was occasioned by a statement of Green to the effect that if Dixon indorsed the draft, the receipt should be in his name. But upon cross-examination, with reference to the statements of Johnson in regard to the draft, Green says: "I am not positive of the words he said, but from the instructions I gleaned that Dixon was to get the money." Plaintiff testifies positively that he never told Green that the money could be paid to Dixon; that he did not know there was a receipt issued to Dixon; that he never told anybody to deposit it to the credit of Dixon; that he never told Green that it would be all the same for Dixon to receive the money, or for it to be deposited to his credit; that not a word was said at the bank in his presence about the money being deposited to Dixon's credit. Dixon did not appear as a witness; in fact, the record shows that he was a confidence operator, and that the whole transaction, so far as Dixon was concerned, was a fraudulent scheme to get possession of $1,500 of plaintiff's money. It is nowhere claimed that Dixon paid anything for an assignment of the draft, or that he ever procured an assignment thereof, or was in any view its owner. Defendant's reliance, being entirely based upon the proposition that plaintiff when he drew the draft deposited the same to the credit of Dixon for collection, is, in our opinion, without basis. While Green does testify to some facts which might indicate instructions to pay the money when collected to Dixon, and statements which, if true, might estop plaintiff from claiming the money if paid to Dixon, yet when the testimony of Green is analyzed, it is demonstrated that upon his cross-examination he qualifies all of his previous statements, and there remains in his testimony but a

statement of an inference which he drew from statements made by plaintiff, the purport of which he does not pretend to give. In the respects above set forth, and in other respects, the testimony of Green is very contradictory and unsatisfactory. We think the record discloses that the defendant bank received this draft for collection as the agent of plaintiff upon an agreement to deposit to his credit the amount thereof, or to pay to him the money; that there were no instructions to deposit it to Dixon's credit; that the bare issuance to Dixon of a memorandum of deposit by Johnson of the draft did not of itself warrant the payment of the money to Dixon. While it is true that a negotiable instrument may be transferred by delivery, if the intent so to transfer is made apparent, there is nothing in this record to show any such intent upon the part of plaintiff, or any agreement with reference to the transfer of the draft. The matters testified to by Green are violative of every rule of banking, unusual in character, and would be far from convincing had he not thereafter qualified the same by a practical withdrawal of such statements. In actions of this character the burden is certainly upon the bank to show that this draft which it received as a collection agent had been paid over to plaintiff, or to someone by his authority. We find nothing warranting such finding, and the findings of the court as made are unsupported.

Judgment reversed and cause remanded.

James, J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 29, 1911.